ODELL, Appellant, *v.* HOLLOWAY, Respondent.

(No. 6,559.)

(Submitted January 25, 1930.   Decided February 10, 1930.)

[284 Pac. 545.]

580

*Mr. H. A. Tyvand* and *Mr. Frank M. Gray,* for Appellant.

*Mr. Walter S. Hartman* and *Mr. Roy M. Keister,* for Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Norman Odell brought action against Ray Holloway for damages for alleged malicious prosecution. Issues being joined, a jury trial was had, which resulted in verdict in favor of plaintiff and judgment was duly entered thereon. Defendant moved for a new trial, which motion was sustained. Plaintiff has appealed from the order granting defendant a new trial.

A solution of the question as to whether or not the verdict was "against law" demonstrates the correctness of the order.

The evidence, as a whole and undisputed, establishes the following facts:

In June, 1928, Odell drew an undated check on a Butte bank, in which he had no funds, directing it to "pay to

cash" $15; he indorsed the check and delivered it to Ed. Steltz, who thereafter induced Holloway to cash it at Bozeman. Holloway banked the check, which came back marked "No account." Several letters passed between him and Odell, and he finally notified the maker that, unless payment was received within a specified time, he would turn the matter over to the sheriff. Receiving no response to his final letter, Holloway mailed the check, with Odell's letters and copies of his own, to the sheriff, with the request that such steps as were proper be taken.

The sheriff consulted the county attorney, and thereafter told Holloway that the county attorney had directed him "to get Odell," and instructed him "to come upstairs and sign a complaint." Obeying the instruction, Holloway signed a blank form, which the justice of the peace later filled out and on which he issued a warrant. Odell was arrested in Butte, taken to Bozeman, and there held in jail until he could secure bail. Later the complaint was dismissed.

Holloway was at no time insistent upon prosecution; on receipt of his letter at the sheriff's office, a deputy sheriff consulted Holloway, who merely told him he "could do as he saw fit, or let it go, as the amount involved was not great." Later, when advised by the county attorney that he did not think he could do anything with the pending charge, Holloway replied, "Well, if you cannot, all right; it does not make a thundering lot of difference anyhow."

When asked concerning his consultation with the county officials, on cross-examination, defendant replied: "They consulted me; I did not consult them at all; I simply mailed all of this correspondence to them, for them to do whatever they thought ought to be done." Asked the question: "You did not care what they did?" he replied: "It was not I that was doing it; I was putting it up to the county attorney's office. I did not see the county attorney; the sheriff did."

With the record in this condition, the court advised the jury that "if the defendant, Ray Holloway, turned over to the sheriff's office all of the facts and circumstances in his posses-

sion surrounding the transaction, for the purpose of having the sheriff's office take such action as was proper in the premises, and the sheriff of the county, after consultation with the county attorney, advised the defendant Holloway that Odell, the plaintiff in this case, should be arrested, and that Holloway should sign a complaint to that effect, and Holloway in good faith obeyed the instructions and signed a blank complaint, which was afterwards filled out by the justice of the peace, upon which complaint the warrant of arrest was issued, your finding must be for the defendant.''

This instruction is in harmony with all other instructions given on the subject; it meticulously conforms to the undisputed facts, and was, in effect, an instruction to return a verdict in favor of defendant, if the jury believed that Holloway acted in good faith. On the undisputed evidence, no other logical conclusion could be reached than that Holloway did act in good faith. A jury cannot disregard undisputed credible evidence, and, if they do, the court is authorized to set the verdict aside.

As the instruction, right or wrong, became the law of the case, and the jury returned a verdict contrary to that instruction, the verdict is ''against law,'' and the court did not err in granting defendant a new trial.

Order affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.